

**O'TOOLE SCRIVO**
ATTORNEYS AT LAW

THOMAS P. SCRIVO
tscrivo@oslaw.com

May 13, 2022

**BY ECF**
Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *In re Direct Purchaser Insulin Pricing Litigation*, No. 3:20-cv-3426-ZNQ-LHG (D.N.J.)

Dear Judge Quraishi:

As required by your Judicial Preferences effective May 1, 2022, I write for the PBM Defendants[1] to request a pre-motion conference on the PBMs' planned motion under Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings. The motion is based on the recent decision in *In re EpiPen Direct Purchaser Litigation*, 2022 U.S. Dist. LEXIS 63272 (D. Minn. Apr. 5, 2022), a court whose analysis this Court previously found "instructive and persuasive" in deciding the PBMs' earlier motion to dismiss (Dkt. 158 at 23).

*First*, PBM Defendants will seek judgment on Plaintiffs' RICO liability theory insofar as it is predicated on alleged violations of the federal Anti-Kickback Statute (AKS) by way of the Travel Act. Because the AKS is not a RICO predicate, Plaintiffs attempt to shoehorn alleged AKS violations into RICO by claiming that AKS violations constitute "bribery" under the Travel Act. In its motion-to-dismiss order, this Court described Plaintiffs' AKS-through-the-Travel-Act theory as "somewhat circuitous" (Dkt. 158 at 25), but decided to "leave the 'bribery' question for another day, should Defendants choose to raise it." *Id.* That was the same course the *EpiPen* court took. On April 5, 2022, on a renewed motion to dismiss, the *EpiPen* court rejected the plaintiffs' theory as a matter of law. 2022 U.S. Dist. LEXIS 63272, at *16 (D. Minn. Apr. 5, 2022) ("Because bribery under the AKS is broader than Travel Act bribery, it cannot form a [RICO] predicate act."). This Court should do the same.

*Second*, PBMs also intend to seek judgment on Plaintiffs' claims against their corporate parents.[2] The *EpiPen* court has twice dismissed claims against the PBMs' corporate parents because the complaints did not allege facts showing that the parents engaged in wrongdoing.

---

[1] The PBM Defendants include OptumRx, Inc., CVS, and Express Scripts.
[2] The PBMs' corporate parents are UnitedHealth Group, Inc., United Healthcare Services, Inc., Optum, Inc., OptumRx Holdings, LLC, CVS Health Corporation, and Express Scripts Holding Company (now renamed Evernorth Health, Inc.).

Honorable Zahid N. Quraishi, U.S.D.J.
May 13, 2022
Page 2

*EpiPen*, 2022 U.S. Dist. LEXIS 63272, at *32–35. Here too, Plaintiffs have sued multiple entities based only on their corporate affiliation with a PBM, alleging only that they are involved in the alleged conduct "through [their] subsidiaries." Dkt. 112 ¶¶ 31–34. Plaintiffs' allegations in this case are even more threadbare than the allegations the *EpiPen* court held were insufficient.

### Argument

***RICO AKS-through-the-Travel-Act Theory.*** To plead a RICO claim, a plaintiff must allege, among other things, that a defendant committed two or more acts of "racketeering activity" from the "exhaustive list of acts" enumerated in the RICO statute. *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) (citing 18 U.S.C. § 1961(1)). The AKS is not included in RICO's exhaustive list of predicate crimes. 18 U.S.C. § 1961(1). But Plaintiffs claim that AKS violations nonetheless qualify as RICO predicates because an AKS violation also violates the Travel Act, which is among the listed RICO predicates. The Travel Act prohibits certain unlawful activity in interstate commerce, including "bribery." 18 U.S.C. § 1952(b). Plaintiffs' AKS-through-the-Travel-Act theory thus "succeeds only if the definition of bribery under the Travel Act is coextensive with the definition of bribery under the AKS." *EpiPen*, 2022 U.S. Dist. LEXIS 63272, at *11. It is not, as the *EpiPen* Court recently held. *Id.*

The Travel Act incorporates a generic definition of bribery that is different from (and narrower than) an AKS violation. When a statute, like the Travel Act, lists general categories of offenses (such as "bribery" or "arson") as predicate offenses, the Supreme Court has explained that the listed offenses "must refer to generic crimes." *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009). As applied to the Travel Act, the Supreme Court has recognized that the statute's reference to "bribery" was meant to convey the crime's "generic definition . . . , rather than a narrow common-law definition." *Perrin v. United States*, 444 U.S. 37, 49 (1979).

To determine whether an alleged offense qualifies as a predicate offense, "courts apply what is known as the categorical approach": they "compare the elements of the [alleged] crime . . . with the elements of the 'generic' version of the listed offense." *Mathis v. United States*, 579 U.S. 500, 503 (2016). An alleged offense qualifies as a predicate generic offense "if, but only if, its elements are the same as, or narrower than, those of the generic offense." *Id.* A "crime cannot qualify as a[]. . . predicate if its elements are broader than those of a listed generic offense." *Id.* at 509.

The AKS is not a predicate crime under the Travel Act because the elements required to prove an AKS violation are different from—and broader than—the elements required to prove generic bribery. *See EpiPen*, 2022 U.S. Dist. LEXIS 63272, at *16. Generic commercial bribery entails "payments to private persons to influence their actions," in violation of some "special trust." *Perrin*, 444 U.S. at 43 n.11, 45; *EpiPen II*, 2022 U.S. Dist. LEXIS 63272, at *13. The AKS, on the other hand, reaches beyond those elements, prohibiting "any remuneration (including any kickback, bribe, or rebate)" that meets certain statutory requirements. 42 U.S.C. § 1320a-7b(b)(2). The AKS lists six requirements, but none is a "special trust" or other fiduciary relationship (as is required for generic commercial bribery). *Id.*; *United States v. Goldman*, 607 F. App'x 171, 173–

Honorable Zahid N. Quraishi, U.S.D.J.
May 13, 2022
Page 3

74 (3d Cir. 2015). Because an AKS violation does not require proof of that essential element of generic bribery, it is not a predicate under the Travel Act.

On April 5, 2022, the U.S. District Court for the District of Minnesota rejected an identical AKS-through-the-Travel-Act RICO theory for precisely these reasons. *EpiPen*, 2022 U.S. Dist. LEXIS 63272, at *13 ("This "special trust" element is lacking in bribery under the AKS. A violation of the AKS requires proof of six elements, none of which is a "special trust" or other fiduciary relationship."). In its earlier motion-to-dismiss decision, this Court found "no reason to diverge from the *EpiPen* court's sound reasoning, particularly in such a recent case involving similar parties, allegations, and arguments." Dkt. 158 at 22–23. The same is true now. The PBMs should be allowed an opportunity to file their Rule 12(c) motion, and this Court should follow the *EpiPen* court's well-reasoned decision and enter judgment in Defendants' favor as to Plaintiffs' AKS-based RICO claims.

***Parent Corporations.*** "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). To hold a corporate parent liable, plaintiffs must be able to "trac[e]" the wrongdoing "to the parent through the conduit of its own personnel and management" or show that the parent company "is directly a participant" in the alleged wrongdoing. *Bestfoods*, 524 U.S. at 64. The *EpiPen* court recently dismissed claims against the PBMs' corporate parents (for a second time) after concluding that the plaintiffs failed to allege that they were "part of the alleged scheme." 2022 U.S. Dist. LEXIS 63272, at *32.

The same is true here. Plaintiffs have not alleged facts plausibly suggesting any wrongdoing by the parent companies. Plaintiffs plead no facts about the companies at all, other than to identify them as parent companies. There are no credible factual allegations that any of the corporate parents operates as a PBM. *See* First Am. Compl. ¶¶ 31–34, 36. Nor are there factual allegations that any parent is any company's alter ego. Plaintiffs allege only that the corporate entities "provid[e] pharmacy benefit management services *through [their] subsidiaries*." *Id.* (emphasis added). That is not enough.

                Respectfully submitted,

                */s/ Thomas P. Scrivo*
                Thomas P. Scrivo

Cc:    All counsel of record (*via* ECF)